```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,

          -against-                    ORDER AND MEMORANDUM
                                           03-CR-1121(DRH)
ROHAN MANRAGH,

          Defendant.
------------------------------X
A P P E A R A N C E S:

For the Government:
    Roslynn R. Mauskopf
    United States Attorney
    Eastern District of New York
    One Pierrepont Street
    Brooklyn, New York 11201
      By: Demetri M. Jones, A.U.S.A.

For Defendant:
    Federal Defender Division
    460 Federal Plaza
    Central Islip, New York 11722
      By: Randi L. Chavis, Esq.
```

HURLEY, District Judge

Rohan Manragh ("Manragh" or "defendant") stands accused of illegally reentering the United States after being deported following his conviction for an aggravated felony in violation of 8 U.S.C. § 1326(a). Pending before the Court is his motion to dismiss the indictment on the ground "that his prior deportation violated due process." (Chavis Decl. Supp. Mot. ¶ 1.)[1] Specifically, he maintains that his prior deportation may not

---

[1] When the briefing schedule was established, it was the Court's intention — communicated to counsel — to issue a bench decision following receipt of counsels' memoranda of law and oral argument. However, after reading their thorough and well crafted submissions, I decided to do a written decision.

serve as a legitimate basis for the illegal reentry charge "because at his prior deportation hearing, [he] received ineffective assistance of counsel for his trial attorney failed to present necessary evidence to the immigration judge in support of his application for 212(c)[2] relief and his appellate attorney failed to file a necessary brief in support of his appeal resulting in summary dismissal." (Id. at 2.)

For the reasons indicated infra, the motion to dismiss the indictment is denied.

BACKGROUND

1. Defendant's Initial Entry into the United States

Defendant was born in Jamaica. He legally entered the United States in 1974 when he was 13 years old as a permanent resident along with his six siblings. (Chavis Decl. Supp. Mot. at 3.) His mother was initially a permanent resident and eventually became a citizen. (Id.)

2. Defendant's Criminal Record

In 1979, defendant pled guilty to Criminal Sale of a Controlled Substance in the Fourth Degree in violation of New York State Penal Law § 221.40. He was sentenced to a conditional

---

[2] The complete cite for "212(c)" is Section 212(c) of the Immigration and Naturalization Act, 8 U.S.C. § 1182(c). Prior to its repeal in 1996, Section 212(c) permitted an immigration judge under certain circumstances, in the exercise of his or her discretion, to allow an otherwise deportable alien to remain in the United States. United States v. Copeland, 376 F.3d 61, 64 (2d Cir. 2004).

discharge and a $600 fine. (Gov't's Mem. in Opp'n, Ex. A.)

A year and a half later, i.e. in November of 1980, defendant was charged with Assault in the First Degree and Criminal Possession of a Weapon in the Second Degree in violation of New York State Penal Law §§ 120.10 and 265.03. (Id. Ex. B.) Those charges arose from an incident during which defendant shot another person who, according to defendant, had attempted to steal his marijuana after he offered to sell that person and his companion "a couple of bags." (Transcript of Deportation Proceeding ("Tr.") at 210.)[3] After bail was apparently posted by his mother, defendant failed to appear for a scheduled court date on December 9, 1980. (Id. 100-01.) As a result, another State charge was leveled against defendant, Bail Jumping in the First Degree in violation of New York State Penal Law § 215.57. (Gov't's Mem. Opp'n at 2.)

The bench warrant issued in December of 1980 was executed "in approximately 1984." (Tr. at 72.) Sometime thereafter defendant pled guilty, as charged, to the assault and weapon possession charges, and to Bail Jumping Second Degree in satisfaction of the Bail Jumping First Degree charge. (Gov't's Mem. Opp'n at 3 and Ex. D.)

On May 6, 1985, defendant was sentenced to an

---

[3] The deportation proceeding occurred on three dates, viz. Sept. 26, 1988, Nov. 9, 1988, and Jan. 6, 1989.

indeterminate sentence of imprisonment of 3⅓ to 10 years incarceration on the convictions for assault and weapons possession, and 1⅓ to 4 years on the Bail Jumping in the Second Degree conviction, with all sentences to run concurrently. (Id.) Defendant was released from jail on May 27, 1988. (Tr. at 78.)

3. Order to Show Cause Filed by Immigration and Naturalization Service ("INS")

By Order to Show Cause dated September 7, 1984 ("OSC"), the INS sought to deport defendant to Jamaica based on his 1979 drug conviction. (Chavis Decl. Supp. Mot., Ex. 1.) On September 26, 1988, defendant appeared before Immigration Judge Patricia Rohan ("IJ Rohan") to answer the OSC, accompanied by his attorney James Lane, Esq. of the Jacob B. Fuchsberg Law Firm. Mr. Lane acknowledged that his client was subject to deportation but advised the Court that he had "an application for relief under Section 212(c)."[4] (Tr. at 2.) A hearing was then scheduled for November 9, 1988. (Id.) The details of the hearing are provided infra.

4. Deportation Hearing

The hearing on defendant's 212(c) application was held on November 9, 1988 and January 6, 1989. Appearing for defendant was Mr. Lane, this time accompanied by another attorney from the

---

[4] The delay between the 1979 conviction and the 1988 deportation hearing appears to be at least partially attributable to defendant being a fugitive for approximately four years and a state inmate for three years thereafter.

Jacob D. Fuchsberg law firm, Mr. Malinsky. Defendant, his mother, wife, and one of his sisters, testified. Through them, considerable information was placed before IJ Rohan bearing on the favorable 212(c) factors that she was required to consider in reaching her determination. For example, evidence was adduced about defendant's long-time family and other ties to the United States, and the fact that his wife and children are citizens. Substantial countervailing information, however, was also presented, i.e. evidence adverse to the granting of the relief requested. By written decision dated January 20, 1989, IJ Rohan denied defendant's 212(c) application. (Gov't's Mem. Opp'n, Ex. E.)

5. Appeal of IJ Rohan's Decision and Other Subsequent Legal Efforts by Defendant Prior to His Deportation

Following the adverse determination by IJ Rohan, defendant obtained new counsel for appeal purposes, Mr. Freedman. Mr. Freedman maintained that trial counsel provided defendant with constitutionally defective assistance by failing to present IJ Rohan with adequate evidence of defendant's medical condition, and the effect of that condition on his employability.

Defendant contends that Mr. Freedman also rendered ineffective assistance. In particular, it is alleged that he neglected to advise defendant of the need "to file an affidavit to support [his ineffective assistance of counsel] claim and . . . to give notice to his trial attorney about the claim." (Chavis

Decl. Supp. Mot. at 6.)  Mr. Freedman is further criticized for not "fil[ing] a brief in support of his notice of appeal." (Id. at 7.)

By decision of the Board of Immigration Appeals ("BIA") dated May 30, 1990, the decision of IJ Rohan was affirmed. Defendant then hired the law firm of Scheinfeld and Solovay seeking to reopen the matter. Simultaneously, defendant, proceeding pro se, sought the same relief. However, while the applications by new counsel and defendant were pending, defendant was deported. As a result, current counsel reports, those applications were "considered withdrawn under 8 C.F.R. § 3.2(d)." (Id. at 8.)

6. Deportation Order and Arrest on Current Charge

A warrant of deportation was issued on January 24, 1991. (Gov't's Mem. Opp'n, Ex. J.) "In approximately March 1991, [defendant] was removed from the United States to Jamaica." (Id. at 6.)

Thereafter, as explained by the government:

> At some point between March 1991 and August 1992, defendant illegally returned to the United States and was thereafter charged by a Suffolk County New York grand jury with three felony counts of Criminal Possession of a Controlled Substance in the Third Degree and three felony counts of Criminal Sale of a Controlled Substance in the Third Degree. On August 5, 1993, defendant entered a guilty plea to one count of Attempted Criminal Sale of a Controlled substance in the Third Degree, a class C Felony and on November 24,

> 1993, was sentenced as a second felony
> offender to serve four to eight years in
> prison. Defendant served his state prison
> sentence on that conviction and on or about
> March 21, 1997, was again removed to Jamaica.
>
> Between March 27, 1997 and 2003,
> defendant again returned illegally to the
> United States. On or about June 10, 2003,
> defendant was found in the custody of the
> Suffolk County New York Sheriff at the
> Suffolk County jail awaiting trial on a
> felony charge of Criminal Possession of
> Marijuana in the Second Degree.
>
> On or about October 14, 2003, a federal
> grand jury in this district returned a true
> bill on the instant indictment. . . .

(Id. at 6-7)(citations deleted).)

APPLICABLE LAW

1. Collateral Attack on Deportation Order

"An alien can defend against [a charge of illegally reentering the country in violation of § 1326(a)] by challenging the validity of the deportation order upon which the charge is predicated." United States v. Copeland, 376 F.3d 61, 66 (2d Cir. 2004). To prevail, the defendant must show –

> (1) [he] exhausted any administrative
> remedies that may have been available to seek
> relief against the order;
>
> (2) the deportation proceeding at which the
> order was issued improperly deprived the
> alien of the opportunity for judicial review;
> and
>
> (3) the entry of the order was fundamentally
> unfair.

8 U.S.C. § 1326(d).

"[T]he three 'requirements are conjunctive, and thus [defendant] must establish all three in order to succeed in his challenge to his removal order.'" United States v. Garcia-Jurado, 281 F. Supp. 2d 498, 504 (E.D.N.Y. 2003)(quoting United States v. Fernandez-Antonia, 278 F.3d 150, 157 (2d Cir. 2002)); United States v. Etienne, No. Crim. 3-03-CR-190, 2005 WL 165384, at *2 (D. Conn. Jan. 14, 2005). Moreover, the concept of prejudice is embodied within the third element. Which is to say, for the order to be fundamentally unfair the evidence must indicate that the "defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred." Copeland, 376 F.3d at 73 (internal quotations marks and citation omitted); see also Scott, 394 F.3d 111, 118 (2d Cir. 2005)("`[P]rejudice' in the context of § 1326(d) 'is shown where there is a <u>reasonable probability</u> that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'")(quoting Copeland, 376 F.3d at 73) and United States v. Sosa, 387 F.3d 131, 138 (2d Cir. 2004)("An alien is prejudiced by a fundamental procedural error where there is a reasonable probability that, but for the IJ's unprofessional errors, the alien would have been granted Section 212(c) relief.")(internal quotations marks and citation deleted).

2. Section 212(c) of Immigration and Nationality Act, <u>8 U.S.C. Section 1182(c)</u>

As noted, defendant sought § 212(c) relief from IJ Rohan. As explained by the Second Circuit in <u>United States v. Scott</u>:

> While in effect, § 212(c) of the I & N Act (repealed 1996) permitted certain aliens to seek a discretionary waiver of deportability. In considering a 212(c) application, an immigration judge [had to] balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appear[ed to be] in the best interests of this country. <u>Adverse factors</u> include: (1) the nature and circumstances of the exclusion ground at issue; (2) other immigration law violations; (3) the alien's criminal record; and (4) evidence indicative of an alien's undesirability as a permanent resident. <u>Favorable factors</u> include: (1) family ties to the United States; (2) many years of residency in the United States; (3) hardship to the alien and his family upon deportation; (4) United States military service; (5) employment history; (6) community service; (7) property or business ties; (8) evidence attesting to good character; and, in the case of a convicted criminal, (9) proof of genuine rehabilitation.

394 F.3d at 119-20 (internal quotation marks and citations deleted).

3. Claim of Ineffective Assistance of Counsel
   in Deportation Proceedings

A deportation proceeding is civil in nature, not criminal. Accordingly, the fifth amendment right to due process, rather than the sixth amendment right to counsel is applicable. <u>Dakane v. United States Attorney Gen.</u>, 399 F.3d 1269, 1273 (11th

Cir. 2005); United States v. Perez, 330 F.3d 97, 101-02 (2d Cir. 2003). "[F]or an alien to prevail on a claim of ineffective assistance of counsel, he or she must show that his counsel's performance was so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause." Id. at 101 (internal quotation marks and citation deleted).

"To show fundamental unfairness, an alien must allege facts sufficient to show (1) that competent counsel would have acted otherwise, and (2) that he was prejudiced by his counsel's performance." Id. (internal quotation marks and citations deleted). And, as noted earlier, prejudice in the current context means that, but for the attorney's error, there is a reasonable probability that the alien's application for 212(c) relief would have been granted. Scott, 394 F.3d at 118.

DISCUSSION

1. Crux of Defendant's Position

The gravamen of defendant's current complaint is not that the immigration judge committed an error, either in balancing the various factors that bear on an application for 212(c) relief or otherwise. Instead, fault is ascribed initially to trial counsel who supposedly "did not present sufficient evidence of Mr. Manragh's medical condition nor did he seek an adjournment to procure such evidence." (Chavis Decl. Supp. Mot.

-10-

at 24; see also id. at 27 ("Mr. Manragh suffers from Epstein Barr and Chronic Fatigue Syndrome. Because of his illnesses, he receives continuous treatment and is restricted from certain kinds of employment. . . . Failure to present this evidence severely prejudiced his ability to effectively argue for [212(c)] relief."); id. at 35-36 ("[T]he relief Mr. Manragh sought was . . . a 212(c) waiver of deportation. He would have obtained this relief but for his attorney's failure to present additional evidence at trial in regard to his medical condition and the cause behind his failure to procure steady employment.").)[5]

Appellate counsel is said to have compounded trial counsel's error via the shortcomings listed earlier.

2. Burden of Proof

It is defendant's obligation to demonstrate that he is deserving of a 212(c) waiver of deportation. Correa v. Thornburgh, 901 F.2d 1166, 1171 (2d Cir. 1990) (["A 212(c)] waiver is available at the discretion of the Attorney General to

---

[5] Although there is some language in the Chavis Declaration suggesting that there may have been other errors by trial counsel (see Chavis Decl. Supp. Mot. at 7-8 (noting that motion made by defendant's appellate counsel to reopen appeal and stay deportation stated that "there were many issues that required briefing . . . particularly Mr. Manragh's debilitating medical condition"), none is identified no less discussed. Moreover, the Court's perusal of the materials submitted, including the transcript of the deportation hearing, fails to disclose any unarticulated ground or grounds warranting the relief requested. Accordingly, the discussion in the text is limited to the charged inadequacy of counsel regarding the medical proof and its concomitant effect on defendant's employment history.

lawful permanent resident aliens who have kept a lawful unrelinquished domicile in the United States for seven consecutive years and can demonstrate that they are deserving of a waiver."). Given that defendant was convicted of a drug offense, he "must present a showing of unusual or outstanding countervailing equities to obtain a waiver, particularly if the grounds for exclusion involved [, as here,] trafficking in drugs." Id. at 1170; (see also Jan. 20, 1989 Decision of IJ Rohan at 3.)

The core issue, then, is whether Messrs. Lane, Malinsky and Freedman provided defendant with ineffective assistance of counsel and, if so, whether he was prejudiced as a result thereof in the sense that, but for their errors, there is a reasonable probability that he would not have been deported.

3. Defendant Has Failed to Establish That he was Denied
   <u>Effective Assistance of Counsel at the Deportation Hearing</u>

As noted, defendant must satisfy each of the requirements set forth in subdivision 1, 2 and 3 of Section 1326(d) to prevail. The government agrees that he exhausted available administrative remedies, thereby satisfying the first requirement. The other two requirements are contested, however, with the government arguing that (1) defendant received adequate representation at the deportation hearing, and (2) even if, <u>arguendo</u> such was not the case, defendant has failed to demonstrate resulting prejudice. The Court agrees on both

counts.

      Contrary to the position urged by defendant, trial counsel placed abundant evidence before IJ Rohan as to defendant's medical condition and its effect on his ability to work. (See, e.g., (1) receipt into evidence of a letter from defendant's doctor indicating that defendant was being "treated here for chronic fatigue syndrome with . . . Epstein Barr . . ." and that "[d]ue to his condition, he has not been working for the last two months," Tr. at 110-11; (2) testimony from defendant's wife that defendant has been under a doctor's care for "chronic [fatigue] syndrome" since he was released from prison for which he takes medicine "[t]wice a day," id. at 153-54; (3) defendant's wife also testified in response to a question as to why her husband was not working that it was "[b]ecause he's . . . being treated by this doctor and the doctor doesn't want him to work now . . . ," id. at 178; and (4) defendant testified that: (a) he suffers from "[c]hronic fatigue syndrome," which condition is monitored via periodic "blood tests," id. at 194; (b) his condition developed in jail after he was assaulted by another inmate and sustained a broken jaw, followed by a period of decreased food consumption and a significant loss of weight, id. at 194-95; and (c) upon being released from jail his mother recommended that he see a doctor, which doctor determined that he suffered from Epstein-Barr. He was told by his doctor that he

didn't "want [him to] work," id. at 195.)

In sum, there was considerable evidence presented to the immigration judge which explained defendant's medical condition and the effect it had on his ability to work after he was released from jail; included within that body of evidence was the aforementioned letter from his doctor. Moreover, although defendant insists that competent counsel would have submitted more information, no specificity as to the nature of such supposed supplemental information has been identified. Under the circumstances, the Court is not in a position to label trial counsel's efforts as constitutionally substandard under the due process clause of the fifth amendment. To the contrary, it appears that the medical/employment issue was appropriately pursued by trial counsel at the deportation hearing.

And even if, arguendo, defendant was burdened by ineffective assistance of counsel at the deportation hearing, his collateral attack would still fall short of the mark given the absence of resulting prejudice.

Implicit in defendant's ineffective assistance of counsel argument is the proposition that his employment history contributed in some meaningful fashion to the denial of his 212(c) application; otherwise, he would be unable to satisfy the "reasonable probability" standard previously discussed. That conclusion, however, is out of sync with the text of IJ Rohan's

January 20, 1989 decision. Indeed, while IJ Rohan comments therein on defendant's lack of current employment and his "very unstable work history," the comment is made in the context of noting that defendant's wife "has been able to provide support for herself and her two children [via her employment] as a post office clerk. . . ." (Jan. 20, 1989 Decision at 3.) The only other reference to defendant's employment in the decision reads: "[t]he respondent owns no property in the United States, has had sporadic employment and presented no evidence that he has filed United States income tax returns." (Id. at 4.)

A fair reading of IJ Rohan's decision suggests that the defendant's employment history was not a significant factor leading to his deportation. Instead, IJ Rohan seems to have focused on other matters, including defendant's extensive criminal record compiled over a relatively short period of time,[6] his apparent lack of rehabitation,[7] and credibility concerns

---

[6] (See January 20, 1989 decision of IJ Rohan at 3 ("The respondent's arrest record constitutes a very serious adverse circumstance. . . .").)

[7] (Id. at 4 ("I note that the letter of his parole officer indicates that although required to attend an outpatient drug abuse program, he has complied on a 'sporadic basis.' The strength of the respondent's rehabilitation is certainly questionable. The respondent's record and his testimony before me do not provide sufficient reason to conclude that he will not cross the threshold of legality again.").)

-15-

related to his testimony and that of his wife.[8]

The purpose of the above discussion is not to comment on the 212(c) balancing process employed by the immigration judge per se. As noted earlier, that process has not been attacked. Rather, its purpose is to demonstrate that factors other than defendant's medical condition, and its effect on his employment history, apparently played a significantly greater role in causing the denial of his 212(c) application. Simply put, defendant has failed to establish that he was prejudiced by trial counsel's shortcomings even if it is assumed, arguendo, that such counsel afforded constitutionally deficient assistance.

Attention will now be directed to Mr. Freedman, defendant's initial appellate counsel. The omissions charged to him, such as neglecting to file an appellant's brief, constitute ineffective assistance of counsel. But for Mr. Freedman's errors

---

[8] (Id. at 3 ("Although [defendant] initially denied [during the deportation hearing] that he had used the name of Garfield, the name of one of his brother's, he finally acknowledged [when confronted by irrefutable evidence] that he had used that name in connection with one arrest, as well as several other aliases."); see also id. at 4 (IJ Rohan rejects defendant's testimony that he "voluntarily surrendered . . . to the police in 1984" with respect to the then outstanding 1980 arrest warrant, and instead concludes "that it was not until Mrs. Manragh's (half) brother, Arthur Brown, told police that the respondent was in possession of a gun, in 1984, that he was apprehended by the authorities and forced to face the 1980 charges"); see also id. at 3 (IJ Rohan explains that the credibility of defendant's wife was "severely diminished" given her hearing testimony that she lied to defendant's parole officer when she called and told him on December 5, 1988, that defendant "had physically assaulted her on November 24, 1988, and threatened her life").)

to rise to the level of satisfying the third requirement of Section 1326(d), defendant must demonstrate prejudice, i.e. a reasonable probability that, but for the errors, he would have enjoyed a different outcome. See Dakane, 399 F.3d at 1275 (affirming lower court's denial of motion to reopen removal proceeding where notwithstanding appellate counsel's failure to file brief, defendant "failed to show that an appeals brief could have changed the outcome of the appeal").

Here, there is no reasonable probability that defendant would have avoided deportation had appellate counsel performed properly. The charged error at the hearing level lacks merit as just explained. Thus, the record below provides scant, if any, ammunition for appellate counsel. As a result, it is highly unlikely that defendant would have fared well on the merits before the BIA had his appeal been appropriately pursued.

CONCLUSION

For the reasons indicated, defendant's motion to dismiss the captioned indictment is denied.

SO ORDERED.

Dated: April 17, 2006
      Central Islip, New York

                                        _____/S/_____
                                        DENIS R. HURLEY, U.S.D.J.